BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
SHAWN T. ANDREWS (Cal. Bar No. 319565)
Assistant United States Attorney
Deputy Chief, General Crimes Section
IAN V. YANNIELLO
Chief, National Security Division
JENNA W. LONG (Cal. Bar No. 332192)
Assistant United States Attorney
National Security Division
1200/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6104/8692
     Facsimile: (213) 894-3713
     E-mail:    shawn.andrews@usdoj.gov
                jenna.long@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 25-413-AB-3 |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT DENNIS ANAYA URIAS'S MOTION TO COMPEL DISCOVERY |
| v. | |
| ROBERT CARLOS AGUILAR, et al., | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California, hereby files this opposition to defendant DENNIS ANAYA URIAS's ("defendant") motion to compel discovery.

This motion is based upon the attached memorandum of points and

//

//

//

authorities, the files and records in this case, and any evidence and argument at the hearing on this motion.


 Dated: November 21, 2025          Respectfully submitted,

                                   BILAL A. ESSAYLI
                                   First Assistant United States
                                   Attorney

                                   ALEXANDER B. SCHWAB
                                   Assistant United States Attorney
                                   Acting Chief, Criminal Division


                                        /s/
                                   _____
                                   SHAWN T. ANDREWS
                                   JENNA W. LONG
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

I.    FACTS.............................................................1

II.   ARGUMENT..........................................................5

      A.   General Principles.........................................5

      B.   The Materiality Requirement...............................6

      C.   Requests for Impeachment Information......................7

      D.   Records Specific to February 18, 2025.....................9

      E.   More Culpable Participants................................9

      F.   Enterprise Evidence......................................10

      G.   Confidential Informants' Privilege.......................11

III.  CONCLUSION.......................................................13

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

<u>Brady v. Maryland</u>,
  373 U.S. 83 (1963)........................................5, 6, 7

<u>Giglio v. United States</u>,
  405 U.S. 150 (1972)......................................5, 6, 7

<u>Roviaro v. United States</u>,
  353 U.S. 53 (1957).........................................11

<u>United States v. Agurs</u>,
  427 U.S. 97 (1976)..........................................5

<u>United States v. Amador-Galvan</u>,
  9 F.3d 1414 (9th Cir. 1993)................................11

<u>United States v. Arias-Izquierdo</u>,
  449 F.3d 1168 (11th Cir. 2006).............................7

<u>United States v. Bagley</u>,
  473 U.S. 667 (1985).........................................5

<u>United States v. Bell</u>,
  321 F. App'x 862 (11th Cir. 2009).........................7

<u>United States v. Cadet</u>,
  727 F.2d 1453 (9th Cir. 1984)..............................6

<u>United States v. Chon</u>,
  210 F.3d 990 (9th Cir. 2000)...............................5

<u>United States v. Conder</u>,
  423 F.2d 904 (6th Cir. 1970)...............................6

<u>United States v. Coppa</u>,
  267 F.3d 132 (2d Cir. 2001)................................8

<u>United States v. Fernandez</u>,
  231 F.3d 1240 (9th Cir. 2000)..............................8

<u>United States v. Gonzalo Beltran</u>,
  915 F.2d 487 (9th Cir. 1990)..............................12

<u>United States v. Grunewald</u>,
  987 F.2d 531 (8th Cir. 1993)..............................12

<u>United States v. Henderson</u>,
  241 F.3d 638 (9th Cir. 2000)...............................11

<u>United States v. Hernandez</u>,
  608 F.2d 741 (9th Cir. 1979)..............................13

United States v. Jaramillo-Suarez,
    920 F.2d 1378 (9th Cir. 1991)...................................12

United States v. Michaels,
    796 F.2d 1112 (9th Cir. 1986)....................................7

United States v. Muniz-Jaquez,
    718 F.3d 1180 (9th Cir. 2013)....................................6

United States v. Nixon,
    418 U.S. 683 (1974)..............................................8

United States v. Ruiz,
    536 U.S. 622 (2002)..............................................7

United States v. Stever,
    603 F.3d 747 (9th Cir. 2010).....................................6

United States v. Taghipour,
    964 F.2d 908 (9th Cir. 1992).....................................9

United States v. Van Brandy,
    726 F.2d 548 (9th Cir. 1984)....................................12

United States v. Williams,
    898 F.2d 1400 (9th Cir. 1990)...................................12

United States v. Zemlyansky,
    945 F. Supp. 2d 438 (S.D.N.Y. 2013).............................7

Weatherford v. Bursey,
    429 U.S. 545 (1977)..............................................5

**Statutes**

18 U.S.C. § 1513.....................................................11

18 U.S.C. § 1961.....................................................10

18 U.S.C. § 1962.....................................................11

18 U.S.C. § 3500......................................................5

**Other Authorities**

Ninth Circuit Model Criminal Jury Instruction 18.9..................10

**Rules**

Fed. R. Crim. P. 16................................................5, 6

Fed. R. Crim. P. 26.2.................................................5

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTS**

On March 26, 2024, victim H.B. pleaded guilty in case 23-CR-545-AB pursuant to a cooperation plea agreement with the government. (Dkt. 1, Criminal Complaint Against Dennis Anaya Urias and Grevil Zelaya Santiago (hereinafter the "Complaint"), ¶ 21).[1]  H.B.'s cooperation with the government caused H.B. to be "green-lit" by MS-13, which meant his life was in constant danger.  (Id.)

On February 18, 2025, at approximately 8:14 p.m., H.B. was shot and killed by two masked assailants inside the Superior Grocers located at the intersection of South Figueroa Street and West 91st Street in South Los Angeles (the "Superior Grocers").  (Id. ¶ 33.) Before H.B. was shot, H.B. placed a call to FBI Special Agent ("SA") Joseph Carelli, who had provided his FBI-issued cellular telephone number to H.B. with instructions to call in the event H.B. believed he was in danger.  (Id. ¶ 22.)  When SA Carelli answered that call, H.B. told Special Agent Carelli (amongst other things) that: 1) an MS-13 member from the Centrales clique who went by the moniker "Desente," or "Inocente," had been present when another individual tried to shoot H.B.; and 2) SA Carelli had previously shown H.B. a picture of that individual during one of H.B.'s previous proffer sessions with the government.  (Id.)  During that same call, SA Carelli heard the gun shots that killed H.B.  (Id. ¶ 23.)  By the time law enforcement responded to the Superior Grocers in the immediate aftermath of H.B.'s death, however, the masked assailants

---

[1] The docket for this case lists two entries number 1.  The docket entry 1 referenced in this case is dated May 13, 2025.  For ease of reference, the filed copy the referenced complaint is attached hereto as Exhibit A.

who murdered H.B. had fled the scene and apparently left no evidence that could lead to their identification.  (See Id. ¶ 34.)  As such, at that early stage, one of the most promising leads in the possession of law enforcement came in the form of H.B.'s statement to SA Carelli.

Almost immediately, SA Carelli went to work trying to identify the man who H.B. identified as "Desente," or "Innocente," from the Centrales clique.  (Id. ¶ 25.)  One of the first calls SA Carelli made was to CW-2, a cooperating witness and former Centrales clique member, who told SA Carelli that s/he knew of a Centrales clique member who went by the moniker "Desente," and joined the clique in June or July of 2023.  (Id.)  CW-2 described "Desente," as "chunky," with a "white," complexion and long hair.  (Id.)  Armed with that information, SA Carelli reviewed the reports that memorialized H.B.'s previous meetings with the government and discovered that during a meeting on January 19, 2024, SA Carelli showed H.B. photographs of various individuals that law enforcement believed to be MS-13 members.  (Id. ¶ 26.)  At the bottom of a photograph that depicted an individual who bore the traits described by CW-2, H.B. wrote "Centrales":



Centrales

(Id.)

2

Then, SA Carelli found two other photographs of the same individual depicted in the photograph above and caused those photographs to be run through facial recognition software.  (Id. ¶ 27.)  That software associated an FBI number with the person depicted in those photographs, and through the use of that FBI number, SA Carelli obtained a mugshot of co-defendant Robert Carlos Aguilar ("Aguilar").  (Id. ¶¶ 27-28.)  When SA Carelli showed that mugshot to CW-1 (a cooperating witness and former Centrales clique member) and CI-1 (an informant who interacted with members of the Centrales clique during the summer of 2023), both individuals identified Aguilar as "Desente," from the Centrales clique.  (Id. ¶ 29.)  Additionally, CW-1 provided Aguilar's telephone number, 562-500-3341 (the "3341 Number"), to SA Carelli.  (Id.)  Later, through the use of a state authorized search warrant, law enforcement obtained data from the 3341 Number including call logs, location coordinates of cellular phone towers that the phone connected to, and subscriber information.  (Id. ¶ 29.)

Subscriber information from the 3341 Number showed that it was subscribed to Aguilar, and the location coordinates showed that it was near the Superior Grocers at the time of H.B.'s murder.  (Id. ¶¶ 29-30.)  Additionally, call logs from the 3341 Number on February 14, 2025, showed that it received two calls from the same number -- 571-603-8165 (the "8165 Number") -- in the lead up to H.B.'s murder. (Id. ¶ 31.)  The 8165 Number, in turn, had been identified by defendant as his telephone number during his arrest by Glendale Police Department officers on January 6, 2025.  (Id.)  When law enforcement obtained location coordinates for towers that the 8165 Number connected to, pursuant to a search warrant, those coordinates

3

showed the 8165 Number was near the Superior Grocers at the time of H.B.'s murder.  (Id. ¶ 32.)

Later, Los Angeles Police Department ("LAPD") detectives obtained a warrant for defendant's arrest and took him into custody on May 12, 2025.  (Id. ¶ 37.)  Following that arrest, LAPD personnel introduced an informant (the "Perkins Agent") into the cell where defendant was being held.  (Id.)  When the Perkins Agent and defendant struck up an audio-recorded conversation, defendant admitted that both he and co-defendant Grevil Zelaya Santiago ("Santiago") murdered H.B.  (Id. ¶ 38.)

Examining these facts in total, a critical point emerges: CW-1, CW-2, CI-1, and H.B. provided SA Carelli no information about defendant.  Instead, all the information they provided related to co-defendant Aguilar.  And what's more, none of that information about Aguilar directly implicated him in the murder of H.B. -- not one of those individuals can put Aguilar at the Superior Grocers at or around the time of H.B.'s murder.  Similarly, the Perkins Agent here functioned as a human listening device -- he knows nothing about defendant's involvement in H.B.'s murder beyond what defendant told him in their audio-recorded interaction on May 12, 2025.

In July 2025, the government provided approximately 80 gigabytes of discovery to defendant.  That discovery included redacted statements by cooperating witnesses, confidential informants, audio and video recordings.  The government is presently working to re-process and re-produce the already provided discovery in defendant's requested format.  The government has also been in communication about compiling and processing additional discovery items, including requests by each defendant.

4

## II.   ARGUMENT

### A.   General Principles

"There is no general constitutional right to discovery in a criminal case."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977). There are three sources of the government's discovery obligations in a criminal case.  First, Rule 16 of the Federal Rules of Criminal Procedure establishes guidelines for pretrial production by the government, as well as reciprocal discovery by the defendant, of certain limited material, including items "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  Second, under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), the government must turn over to the defense evidence in its possession that is favorable to the defense or that may be used by the defense for impeachment purposes.  Third, under 18 U.S.C. § 3500 (Jencks Act) and Federal Rule of Criminal Procedure 26.2, both parties must disclose statements by a witness that relate to the subject matter of the witness's testimony are required to be disclosed to the defense after the witness has testified.  Simply put, a defendant's request for additional discovery must be grounded in one of these sources.  Absent such grounding, a defendant's requests become nothing more than an overbroad "far reaching fishing expedition."  See United States v. Chon, 210 F.3d 990, 994-95 (9th Cir. 2000); see also United States v. Bagley, 473 U.S. 667, 675 (1985); United States v. Agurs, 427 U.S. 97, 106 (1976) ("there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").

5

**B.    The Materiality Requirement**

To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.  This "requires a presentation of facts which would tend to show that the [g]overnment is in possession of information helpful to the defense."  United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010).  "A general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of [Rule 16(a)(1)(E)(i)]."  United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984) (quoting United States v. Conder, 423 F.2d 904, 910 (6th Cir. 1970) (defendant's discovery request that sought documents the government did not intend to use at trial was too far ranging and potentially burdensome)); see also United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013) ("General descriptions of information sought and conclusory allegations of materiality are insufficient.").

Defendant is seeking information that he has categorized into 19 different groups.  (See Dkt. 57-1, Proposed Order to Compel Discovery (hereinafter "Defendant's Proposed Order")).  For purposes of argument, however, defendant further consolidated those 19 groups into eight sub-groups.  (See Dkt. 57, Motion to Compel Discovery Related to Cooperators, Decedent, Racketeering Acts, Aggravation, and Mitigation (hereinafter "Defendant's Motion"), at 14-17).  This consolidation is almost certainly in recognition of the fact that the Ninth Circuit has repeatedly held that requests for discovery – whether they be rooted in Brady/Giglio[2] or Rule 16 – require

[2] Because Brady is not a discovery device, discovery should not be ordered "based upon mere speculation as to whether the material would contain exculpatory evidence. . . ."  United States v. Bell,

6

justification beyond "mere speculation about materials in the government's files[.]" United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir. 1986) (cleaned up).  Instead, in order to obtain discovery, a defendant must make a showing of materiality, where "the test . . . is whether the requested evidence might affect the outcome of the trial." Id. (cleaned up).  The government's disclosure obligations under Brady and Giglio apply only to material and favorable evidence to the defense.  United States v. Ruiz, 536 U.S. 622, 629 (2002) (noting that "the Constitution does not require the prosecutor to share all useful information with the defendant").  Defendant's attempts to justify his requests as material to his defense under either Brady/Giglio or Rule 16 fall flat.  This is unsurprising.  As described above, none of the group that includes CW-1, CW-2, CI-1, H.B., and the Perkins Agent, possessed or provided any material information about defendant to law enforcement.

### C.    Requests for Impeachment Information

Here, it should be noted that the government has complied and will continue to comply with its discovery obligations.  That commitment should moot many of the requests contained in Defendant's Motion because while defendant separated his justification arguments into eight sub-groups, most of that separation was unnecessary because the requests are functionally identical.  See, e.g., United States v. Zemlyansky, 945 F. Supp. 2d 438, 484 (S.D.N.Y. 2013) (denying motion to compel Rule 16, Brady, and Giglio material where the government "represented that it will turn over any" such material before trial).  Even if not moot, ordering disclosure of

---

321 F. App'x 862, 864 (11th Cir. 2009) (quoting United States v. Arias-Izquierdo, 449 F.3d 1168, 1189 (11th Cir. 2006)).

7

these materials now is premature.  Impeachment or Brady/Giglio evidence must be turned over in time for use at trial.  United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Coppa, 267 F.3d 132, 136, 146 (2d Cir. 2001) ("As a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant."); United States v. Fernandez, 231 F.3d 1240, 1248 (9th Cir. 2000) ("Brady merely requires the government to turn over the evidence in time for it to be of use at trial." (emphasis in original)).

For instance, in his section in support of his requests for "Items 1-6 and 12-13," defendant argues that these materials bear on "the cooperators' and decedent's credibility and motivations to lie[,]" and that the materials could put the cooperators' "performance, reliability, or truthfulness at issue."  (Defendant's Motion at 14.)  Similarly, in his section on "Items 7-8," defendant asserts his request is justified in order to assess whether the "cooperating witnesses . . . were engaged in criminal activity . . . [and had] a motive to lie to law enforcement[.]"  (Id. At 15.)  For "Items 10 and 15," defendant says the items "are relevant to exploring motive to lie and bias."  (Id.)  The records requested as Item 11 "should be disclosed because they provide potential impeachment . . . [and] could be relevant to motive or bias."  (Id. at 16.)

In other words, all the groups of information defendant seeks here are only relevant to the impeachment of testifying witnesses.[3] But if none of the individuals identified by the defendant take the stand, impeachment is not at issue.  See United States v. Taghipour, 964 F.2d 908, 910-11 (9th Cir. 1992)(rejecting argument that the district court abused its discretion by not ordering discovery of tapes defendant sought in order to prepare cross examination of a witness who the government did not call, because the witness's "credibility was not in issue").[4]  On the other hand, the government will comply with its obligations to produce exculpatory information about any and all witness who do testify at trial.

**D.    Records Specific to February 18, 2025**

The government has no power to control the movement or regulate the relationships of its cooperating witnesses, so it is unclear what defendant is seeking through his request for "records specifying the areas and persons H.B. had been instructed to stay away from[.]"  (Defendant's Proposed Order at 5).  Similarly, the government has no way to track the financial lives of its cooperating witnesses, so there are no records detailing "whether the funds found on his person were provided by the FBI or other law enforcement[.]"  (Id.)

**E.    More Culpable Participants**

To the extent that defendant's request is focused on "more culpable participants," (Defendant's Motion at 17-18) the government

---

[3] The statements requested by defendant as "Item 9," are only material as impeachment information against testifying witnesses.

[4] At this juncture, the government has not determined what witnesses it will call at trial, but it goes without saying that H.B. will not testify.  Also, the government does not anticipate calling the Perkins Agent to testify.

is unaware of any materials responsive to defendant's request. While there is evidence to suggest that someone other than defendant, co-defendant Santiago, and/or co-defendant Aguilar gave the order that H.B. should be killed on account of his cooperation with law enforcement, that evidence has been disclosed and constitutes the sum total of the evidence in the possession of the government about more culpable participants.  (See Complaint ¶ 36.) Simply put, if the government had more evidence that more people were involved in the murder of H.B., those people would be co-defendants at this juncture.  If the government obtains any additional information in our review of materials, we will continue to comply with our discovery obligations.

**F.    Enterprise Evidence**

Defendant is correct that the government at trial must "establish an enterprise engaged in racketeering activity," (Defendant's Motion at 17), but a passing examination of the pertinent jury instructions shows that the scope of the government's required proof is not as vast as the defendant seems to believe. First, to prove the existence of a racketeering enterprise under Ninth Circuit Model Criminal Jury Instruction 18.9, the government must show: "a group of people (1) associated for a common purpose of engaging in a course of conduct; (2) that the association of these people was an ongoing formal or informal organization, and (3) the group was engaged in or had an effect upon interstate or foreign commerce."  Then, to prove that enterprise engaged in racketeering activity under Ninth Circuit Model Jury Instruction 18.10, the government must show that the "enterprise was engaged in at least one of the crimes listed in 18 U.S.C. § 1961 [including murder]."

Unlike a charge under 18 U.S.C. § 1962, the government is not required here to demonstrate a pattern of racketeering activity and a single act of murder in furtherance of the enterprise will suffice.  The government has provided discovery related to that murder.

Similarly, defendant misconstrues the term "Federal offense," in 18 U.S.C. § 1513(a)(1)(B).  The statute includes both "commission," and "possible commission" as modifiers for "Federal offense," which broadens the circumstances under which witnesses and informants would be protected by its terms.  As such, the government does not have to prove that a particular offense described by H.B. actually occurred.  As such, there is nothing for defendant to investigate (the purported basis for this request) and no further discovery need be produced.

**G.   Confidential Informants' Privilege**

The government has a privilege to withhold from disclosure the identity of confidential informants.  Roviaro v. United States, 353 U.S. 53, 59 (1957).  "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement."  Id.  Where the disclosure of an informant's identity is relevant and helpful to the defense, or is essential to a fair trial, the privilege must give way.  Id. at 60-61.  To obtain disclosure, a defendant must show more than a mere suspicion that the informant has information which will prove relevant and helpful to the defense or be essential to a fair trial.  United States v. Henderson, 241 F.3d 638, 645 (9th Cir. 2000).  It is the defendant's burden to demonstrate his need.  United States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993).  Defendant must show an actual,

11

concrete need for disclosure; a "mere suspicion" that the identity will prove relevant and helpful is insufficient. United States v. Williams, 898 F.2d 1400, 1402 (9th Cir. 1990). In order to determine whether disclosure is appropriate, the court must analyze three factors: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure. United States v. Gonzalo Beltran, 915 F.2d 487, 489 (9th Cir. 1990).

This is consistent with Ninth Circuit precedent that even when defendant is entitled to disclosure of relevant information, it does not entitle a defendant to a review of all the government's files. United States v. Van Brandy, 726 F.2d 548, 551-52 (9th Cir. 1984). Summaries are sufficient for the government to meet its burden. Id.; see, e.g., United States v. Grunewald, 987 F.2d 531, 535 (8th Cir. 1993) (upholding the production of typewritten summaries of an IRS agent's notes to the defense, rather than the notes themselves).

As noted above, until May 12, 2025, the Perkins Agent had never met defendant. But after they met, defendant spoke extensively with the agent and confessed to his and co-defendant Santiago's participation in the murder of H.B. As such, the Perkins agent had no involvement with defendant's criminal activity. It is well established that informant information is not necessary where he/she is not the only percipient witness of defendant's crime. United States v. Jaramillo-Suarez, 920 F.2d 1378, 1387 (9th Cir. 1991) (finding defendant was not entitled to informant information where there was "no evidence to suggest that the informant was the only witness to any critical event"). Additionally, since defendant

12

confessed to the Perkins Agent, it is unlikely that defendant's trial defense (which has yet to be disclosed) will be that he was not one of the shooters who murdered H.B.  Accordingly, there is no relationship between defendant's defense and the likely testimony of the agent.  Finally, since the Perkins Agent is a paid professional agent who is used in a large number of law enforcement investigations, disclosure of his identity would necessarily end his work as a professional agent and severely compromise his safety. "It is no secret that informers whose identities are disclosed prior to trial are often 'among the missing' when the trial date finally arrives" -- a fact proven by the existence of the instant case.  See United States v. Hernandez, 608 F.2d 741, 745 (9th Cir. 1979).

Defendant has fallen short of demonstrating even a particularized need based on more than speculation, nonetheless the more exacting standard that the specific, identifying information is essential to a fair trial.

**III.  CONCLUSION**

For all of the above reasons, the Court should deny defendant's motion to compel production of the requested discovery.